**In re Elena A. Aguilar GARZA.**

**No. 04–97–00895–CV.**

Court of Appeals of Texas,
San Antonio.

Oct. 7, 1998.

Robert Roy Hamilton, Frances V. Dunham, Marion W. Cain, San Antonio, for Appellant.

Michael D. Bowles, Peter M. Koelling, Civil District Courts Administrator, Ann E. Buonocore, San Antonio, for Appellee.

## OPINION

GREEN, Justice.

In this mandamus proceeding we consider the interaction of a rotating docket system with the Texas Family Code's provisions for continuing, exclusive jurisdiction over suits affecting the parent-child relationship (SAPCR). Elena Aguilar Garza seeks a writ of mandamus to compel the Honorable John Specia, presiding judge of the 225th District Court of Bexar County, to set aside his order "retaining jurisdiction" over proceedings related to the custody and support of the children of her marriage to Ismael Garza. She contends the 131st District Court was the court of continuing, exclusive jurisdiction and, therefore, Judge Specia was without authority to act in the case. We agree with Elena that the 131st District Court was the court of exclusive jurisdiction, but we hold that Judge Specia was authorized to act for the 131st when he ruled in the case. Accordingly, the petition for writ of mandamus is denied.

## BACKGROUND

On February 8, 1994, Elena filed a petition for divorce from Ismael in Bexar County. The cause was assigned to the 225th District Court and given cause number 94–CI–01875. The record reflects that from the date the petition was filed until April 4, 1995, several judges who serve in Bexar County signed orders in the case.[2] On April 4, 1995, the case was called for trial and was formally transferred from the 225th District Court to the 131st District Court through an order signed by Judge John Gabriel, the presiding judge of the 131st. The case was tried in the 131st and Judge Gabriel signed the decree, dated July 21, 1995. However, because of a clerical mistake, the caption of the decree referenced the originally assigned court, the 225th, instead of the 131st.

Ten months later, Elena filed an application for a protective order against Ismael. The action was given a new cause number, 96–CI–07532, and was assigned by the district clerk to the 37th District Court. When the application was called for hearing, it was randomly assigned to be heard by Judge Specia pursuant to the Bexar County district courts' centralized, rotating civil docket system. *See* RULES OF PRAC., PROC. AND ADMIN. IN THE DIST. CTS. OF BEXAR COUNTY, TEXAS, R. 3.1–3.10 (1991) (hereinafter "Local Rules"). It was at the conclusion of this hearing that Judge Specia acted to take exclusive control of the case, saying: "I'm going to retain jurisdiction in this case against my better judgment, but there is a need for one judge to finish this matter. I don't think it needs

---

2. For example, on March 23, 1994, Judge Martha Tanner signed temporary orders; on July 20, 1994, Judge John Specia signed an order for mediation; on September 17, 1994, Judge David Berchelmann, Jr., signed an order allowing withdrawal of counsel; and on October 17, 1994, Associate Judge Richard Garcia signed a protective order, which was approved on the same day by Judge Carol Haberman.

to be bouncing around between different judges...." Thereafter, Judge Specia held both parties in contempt for violating the terms of the decree, and Elena's request for an updated social study was denied. Elena then filed this petition for writ of mandamus, claiming Judge Specia lacked authority to exercise control over the case because she says the 131st District Court is the court of exclusive jurisdiction and Judge Specia is not the judge of that court. She specifically seeks relief from Judge Specia's order in which he personally "retain[s] jurisdiction over this case and Cause No. 94–CI–01875...."[3]

■ We must decide if Judge Specia was authorized to act as he did considering the Family Code provision that fixes "continuing, exclusive jurisdiction" in the court that renders the "final order" in a suit affecting the parent-child relationship. *See* Tex. Fam..Code Ann. § 155.001(a)(Vernon 1996). The divorce decree signed by Judge Gabriel qualifies as a "final order." *See, e.g. Ex parte Sustrik*, 721 S.W.2d 592, 593 (Tex. App.—Fort Worth 1986, no writ).

### The Standard of Review

■ A person seeking mandamus relief generally must establish that the trial judge committed a clear abuse of discretion that cannot be adequately remedied by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Alternatively, the supreme court has held that void orders can be challenged by mandamus, regardless of whether an adequate appellate remedy is available. *See Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973). An order is void only if the court rendering it had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex.1990). When a court's action is merely contrary to a statute or rule, the action is erroneous or voidable, rather than void. *See id.; accord*

*Glunz v. Hernandez*, 908 S.W.2d 253, 255 (Tex.App.–San Antonio 1995, writ denied).

### Continuing, Exclusive Jurisdiction

■ Elena contends Judge Specia's order is void because he was not acting for the court of exclusive jurisdiction. Consequently, our first task is to identify the court with continuing, exclusive jurisdiction over the case. A review of all the facts and circumstances leads to only one reasonable conclusion: Judge Gabriel's order transferring the case into his court for trial, and his signature on the "final order," conclusively establishes the 131st District Court as the court with exclusive jurisdiction. Indeed, this is the position advocated by the eleven civil district judges of Bexar County in their *amicus* brief filed in this court. Once a court has acquired continuing, exclusive jurisdiction with respect to a particular SAPCR, no other court has jurisdiction over the suit unless jurisdiction has been transferred pursuant to the exclusive transfer provisions of the Family Code or an emergency exists. *See* Tex. Fam.Code Ann. § 155.001(c); *see also* Tex. Fam.Code Ann. §§ 155.201–.207 (transfer provisions), § 262.002 (jurisdiction for emergency proceedings).

### Exchange-of-Benches

Next, we determine whether Judge Specia was acting on behalf of the 131st when he issued orders in the case. Judge Specia and the *amici* point to the exchange-of-benches provisions contained in the statutes and constitution in support of their argument that the judge was authorized to act in this case. The Texas Constitution provides that "the District Judges may exchange districts, or hold courts for each other when they may deem it expedient...." Tex. Const. art. V, § 11. Further, the Government Code expressly grants the district courts in Bexar County concurrent jurisdiction. *See* Tex. Gov't Code Ann. § 24.139(c) (Vernon 1988).

---

**3.** Elena does not claim the judge lacked authority on the basis that her application for protective order was not filed in the court of exclusive jurisdiction. She claims instead that Judge Specia was disabled from acting in the entire matter because he was not the judge of the court holding exclusive jurisdiction. Judge Specia, recognizing that the protective order action was associated with the divorce action, consolidated the two matters for purposes of his exercise of "jurisdiction." Elena does not contest this consolidation.

It also sets forth liberal provisions for exchanging benches and transferring cases. For example, section 74.094(a) provides:

A district ... court judge may hear and determine a matter pending in any district ... court in the county regardless of whether the matter is preliminary or final or whether there is a judgment in the matter. The judge may sign a judgment or order in any of the courts regardless of whether the case is transferred. The judgment, order, or action is valid and binding as if the case were pending in the court of the judge who acts in the matter.

*Id.* § 74.094(a) (Vernon Supp.1998). And section 24.303(a) provides:

In any county in which there are two or more district courts, the judges of those courts may, in their discretion, either in termtime or vacation, on motion of any party or on agreement of the parties, or on their own motion, transfer any civil or criminal case or proceeding on their dockets to the docket of one of those other district courts. The judges of those courts may, in their discretion, exchange benches or districts from time to time.

*Id.* § 24.303(a) (Vernon 1988). The rules of civil procedure implement these constitutional and statutory provisions. *See* TEX.R. CIV. P. 330(e)-(h) (setting forth rules for transferring cases and exchanging benches). These provisions also form the basis of the Bexar County local rules that provide for a centralized, rotating docket system for non-jury civil matters. *See* Local Rules 3.1–3.10.

■ Judge Specia argues that, by virtue of these provisions, he was acting for the court in which the matter was officially assigned. We agree. From the record it may be determined that the case was properly transferred into the 131st District Court which, when the decree was signed, became the court of continuing, exclusive jurisdiction. The record does not show that the matter was ever transferred out of that court.[4] Thus, it may be conclusively said that the case remained in the 131st when Judge Specia made the rulings that are the basis of Elena's complaint.

When Judge Specia was assigned to hear the matters underlying this mandamus, he was being assigned to the 131st District Court by the designated presiding judge of the non-jury civil docket pursuant to the civil district court local rules; *i.e.*, exchanging benches, to rule on matters pending in the 131st. Local Rule 3.2 states that "[t]he Presiding Judge shall call the docket of cases set each day, and shall hear and dispose of the matters scheduled or in his discretion assign them to other *judges* who are available." (emphasis added). It is significant that under the rule the "Presiding Judge" is authorized to assign matters to other *judges* for disposition, not to other *courts*. This is consistent with the concept of judges exchanging benches; it is inconsistent with the notion of transferring cases to other courts for disposition. The assignment of the matter to Judge Specia was not intended to, nor did it cause, informally or otherwise, a transfer of the case into the 225th, where Judge Specia happened to be the presiding judge.

■ It has been suggested that in SAPCR cases the supreme court requires the record to explicitly show "that the court with continuing and exclusive jurisdiction was actually the court which exercised jurisdiction." *See Alexander v. Russell,* 699 S.W.2d 209, 210 (Tex.1985). We see no conflict between this requirement and the exchange-of-benches provisions that allow any district judge to determine matters filed in another court in the same county. Once exclusive jurisdiction has been established in a particular court, the record should be clear, in the absence of competent evidence to the contrary, that any district judge in the county acting in that case is doing so for that court. Moreover, the Local Rules clearly require that non-jury matters to be heard in cases from any district court are to be set before the Presiding Judge for disposition or assign-

---

4. The fact that "225th Judicial District" appears in the caption of the decree is not evidence the case had been transferred into that court. First, it is uncontested that the reference to the 225th District Court instead of the 131st was a clerical mistake. Second, reliance on the caption of a decree or judgment as a basis for a jurisdictional determination is legally unsound. *Cf. City of San Antonio v. Rodriguez,* 828 S.W.2d 417 (Tex.1992).

ment to another district judge in the county. *See* Local Rules 3.1 and 3.2. The operation of these rules, in combination with evidence in the record identifying the court of exclusive jurisdiction, shows that any district judge assigned by the Presiding Judge to hear non-jury matters in SAPCR cases is actually acting for the court of exclusive jurisdiction, and the specificity requirement of *Alexander* is satisfied.

## Social Study

■ Elena also argues that Judge Specia's denial of her request for an updated social study was an abuse of discretion for which appeal is an inadequate remedy. It is within the trial court's discretion to order a social study. Tex. Fam.Code Ann. § 107.051(a) (Vernon 1996) ("The court *may* order the preparation of a social study . . . .") (emphasis added). *Also see Swearingen v. Swearingen,* 578 S.W.2d 829, 831 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ dism'd) (social study not mandatory in child custody cases). We, therefore, conclude Judge Specia did not abuse his discretion in refusing to order an updated social study.

## Conclusion

We hold that the statutory and constitutional exchange-of-benches provisions authorize any district judge in the county to rule on custody and support matters so long as the record is clear that the SAPCR is filed in the court of continuing, exclusive jurisdiction, and that the judge is acting for that court. A judge may be shown to be acting for a court by indication on the record or by operation of the local rule. The record in this case shows the 131st District Court had exclusive jurisdiction over Elena and Ismael's divorce action. Further, Judge Specia was acting for the 131st District Court as a consequence of his assignment by the civil non-jury presiding judge to hear matters arising out of the divorce action.

There being no abuse of discretion shown, the petition for writ of mandamus is denied.

\* \* \*

We are constrained to add that we are troubled by a centralized docket system that allows for the serial assignment of different judges to hear multiple matters in the same suit affecting the parent-child relationship. While the Bexar County system appears to be quite efficient in moving cases, it has not adapted to the spirit of the Family Code's exclusive jurisdiction statute and the public policy purposes intended to be served by it. As Judge Specia wisely observed, sometimes "there is a need for one judge to finish [the] matter." Nonetheless, the law does not proscribe the current practice. Consequently, whether the system for assigning judges in SAPCRs in Bexar County needs to be changed is a matter properly left to the discretion of the civil district judges upon review of their local rule practices, or to the legislature as a matter of clarifying its intended public policy.

RICKOFF, J., concurring.

RICKHOFF, Justice, concurring.

The concept of continuing, exclusive jurisdiction has been described as "a major innovation" of the Texas Family Code. Eugene L. Smith, *Texas Family Code Symposium Supplement, Parent and Child,* 8 Tex. Tech L.Rev. 19, 23 (1976). Before the Legislature enacted the continuing, exclusive jurisdiction provisions, suits affecting one child were decided by various judges in various courts, with the effect that "[j]udges passing on some facet of a child's welfare were cast into the position of a blind man touching and describing an elephant." *Id.* "[I]nvesting only one court with power to rule on issues affecting the child was predicted to be an effective way to give courts access to more information and leave them the widest latitude in dealing with the child's best interests." *Id.* This case demonstrates that prediction fails when it confronts issues of court efficiency and convenience.

Yes, we do not wish to disturb Bexar County's rotating docket system. But the district judges should make some attempt to implement the spirit behind the Family Code's provisions for continuing, exclusive jurisdiction over SAPCRs. *See Alexander v. Russell,* 699 S.W.2d 209 (Tex.1985); *see also Pursley v. Ussery,* 937 S.W.2d 566,

567–68 (Tex.App.—San Antonio 1996, no writ) (notwithstanding the exchange-of-benches provisions, only the court that rendered the judgment has jurisdiction to grant a bill of review). The current system renders the continuing, exclusive jurisdiction provisions meaningless. The majority's determination of the court with continuing, exclusive jurisdiction is no more than an academic exercise because they ultimately conclude that by virtue of the rotating docket system, "any district judge assigned by the Presiding Judge to hear non-jury matters in SAPCR cases is actually acting for the court of exclusive jurisdiction...."[1]

I know our district judges individually need no lectures on their duties in suits affecting the parent-child relationship, but the comments of the children's attorney/guardian-ad-litem, Michael D. Bowles, provide a valuable reminder that these cases are primarily about the best interest of individual children, not the convenience of the litigants and the courts generally. He reminds us that as we elevate the vaunted "efficiency" of the rotating docket system and other issues of particular concern to the courts' operation, his clients' childhoods pass quickly. He states that he "is more troubled by the length of time these children have been kept in limbo than whatever the ultimate outcome may be. Both of the parties appear to be good parents, but when dealing with each other they seem to lose sight of the best interests of the children." He also notes:

> This litigation is self-perpetuating. Each parent seems to honestly believe he/she is fighting for the children's best interests, but the parents are liable to destroy the objects of their affection [and the] depths of bitterness in this case have sucked children, lawyers, witnesses, relatives, and even judges into a black hole of wasted money and broken hearts. Unfortunately, the course of recent history in this case may have now denied my clients their last

chance at a life without stress, fear, and hate.

Judge Specia wisely recognized that the rotating docket system did not vindicate the interests of these children. Expressing concern about the effect of this protracted and bitter litigation on the children, Judge Specia assumed jurisdiction over the case to prevent it from "bouncing around between different judges." He thus recognized the best interest/efficiency conflict and acted precisely in accordance with the existing policies underlying the Family Code's provisions for continuing, exclusive jurisdiction. *See Trader v. Dear,* 565 S.W.2d 233, 235 (Tex.1978) ("The Legislature by enacting the Family Code adopted a scheme for handling parent-child matters in a manner that avoids forum shopping, races to the courthouse, child snatching, and the harassment of a parent by the other parent's filing suits in random courts."). But Judge Specia's actions came after at least eight other judges had decided aspects of this case. One of these other judges presided over a *four-week trial* that resulted in a divorce decree giving Ismael sole managing conservatorship of the children. Still another judge subsequently determined summer possession of the children. Thus, we are confronted with a case that exemplifies why the Legislature enacted the continuing, exclusive jurisdiction provisions— a series of skirmishes between the parents were fought before whatever judge happenstance brought the parents to, before one judge finally recognized the need for some continuity. Understanding that "there is a need for one Judge to finish this matter," Judge Specia suggests the all-too-natural temptation not to assume jurisdiction over a tiresome, extended custody case, when he elected to "retain jurisdiction ... against [his] better judgment."

We must recognize that the constitution permits district judges to hold court for one another whenever they deem it expedient. But because judge shopping is a serious

**1.** The only distinction between this case and *Alexander* is the absence in the record of a document expressly purporting to transfer the case from the 131st to the 225th. Instead, this record contains Judge Specia's oral announcement that he wanted future motions to be filed "in this Court," his written order stating that he would retain jurisdiction over subsequent SAPCRs, the parties' subsequent motions filed in the 225th, and an order on motions for enforcement signed by Judge Specia under the "225th" caption.

temptation for some parents and because we must focus on the children, SAPCRs should be determined not only in the *court* of continuing, exclusive jurisdiction, but also by the same *judge*. Before another case like this one appears on this court's docket, the district judges should implement the spirit of the Family Code by creating a rule requiring the presiding judge to consider assigning motions and actions related to custody and support of children to the same judge who rendered earlier decisions related to those children.

With these comments, I join the majority opinion.

