**In re Jose De Jesus AGUILERA, Relator.**

No. 08–00–00010–CV.

Court of Appeals of Texas, El Paso.

Nov. 2, 2000.

Rehearing Overruled Dec. 13, 2000.

Marshall I. Yaker, El Paso, for Relator.

Maria I. Larson, Atty. Gen., San Antonio, Rhonda A. Pressley, Asst. Atty. Gen., Austin, for Respondent.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

This is an original habeas corpus proceeding in which Jose De Jesus Aguilera, Relator, alleges that his confinement is illegal and in violation of the Texas Family Code. Finding that Relator is entitled to partial relief, we conditionally grant the writ.

## FACTUAL SUMMARY

Relator was taken into custody pursuant to writs of capias issued in two cases pending in Bexar County, Texas. A procedural history follows. On February 16, 1990, the Office of the Attorney General filed, on behalf of Relator's wife Gloria G. Aguilera (Ms. Aguilera), an original petition in suit affecting the parent-child relationship in the 150th District Court in Bexar County, Texas (the SAPCR suit). The court entered a child support order and, following subsequent enforcement proceedings initiated by the Office of the Attorney General, entered an agreed order of enforcement on March 9, 1994. On July 1, 1994, Ms. Aguilera filed suit for divorce in the 73rd District Court of Bexar County, Texas (the divorce suit). In the divorce decree entered on August 1, 1995, the court recited that Ms. Aguilera and Relator were the parents of Daniel Jose Aguilera who was not under the continuing jurisdiction of any other court. The decree established Relator's child support obligation and ordered that any employer be required to withhold child support from Relator's disposable earnings. The court further found that Relator was in arrears under the agreed order of enforcement in the SAPCR suit and that all arrearages were assigned to the Attorney General for collection and distribution. The decree contains two other provisions which are of significance to our analysis:

### PRIOR ORDERS.

The Court finds that the parties to this divorce action and the child are currently under an Agreed Order Enforcing Child Support Obligation in the 150th District Court, Bexar County, Texas filed under Cause No. 90EM5–02118. Said order was entered on February 10, 1994. Said Order ordered Respondent to pay monthly child support in the amount of $150.00 per month and also granted judgment against Respondent in favor of the Office of the Attorney General in the amount of $1,800.00 for arrearages owed by Respondent plus interest and ordered Respondent to pay said arrearages by paying an additional $50.00 per month. Said Order also ordered Respondent to pay court costs in that action in the amount of $359.00. Nothing in this decree shall in any way be construed to relieve Respondent of any obligations under said order and the terms and conditions contained in said order shall continue in full force and effect as originally written, except as expressly modified by the terms and conditions contained in this Decree of Divorce.

### CONSOLIDATION OF BEXAR COUNTY ACTIONS

IT IS FURTHER ORDERED AND DECREED that Cause No. 90EM5–02118 in the 150th Judicial District Court of Bexar County, Texas involving the same parties as this action is hereby consolidated under this court and cause number in Bexar County, Texas.

On the same date, the divorce court entered an order of withholding for child support.

On April 20, 1999, the Office of the Attorney General filed motions for enforcement of the child support obligations in both the SAPCR and divorce suits. It also filed a motion to consolidate the two cases.[1] In connection with these two proceedings, the 73rd and 150th District Courts of Bexar County issued orders requiring Relator to appear and show cause in each case at 8:30 a.m. on June 3, 1999. The El Paso County Sheriff's Office served Relator with the orders on May 26, 1999, which was less than ten days prior to the June 3 hearing. Consequently, Relator's counsel faxed a letter dated June 2 to an assistant Attorney General in the San Antonio child support unit complaining that Relator had not received ten days' notice of the hearing. Counsel also stated his

assumption that the hearing would be rescheduled so as to provide Relator with the requisite notice. However, the case was not rescheduled and neither Relator nor his counsel appeared at the June 3 hearing. The trial judge presiding over both cases issued an order for writ of capias in each case based upon the court's findings that Relator had been duly served with notice to appear at the designated date, time, and place for a hearing on the motion for enforcement, but had failed to appear.[2] The court found that the presumption stated in Section 157.101 of the Family Code[3] had been rebutted and further determined that a reasonable cash bond in the SAPCR suit was $1,291.57, which equaled the amount of arrears. In the divorce suit, the court found that a reasonable cash bond was $2,000, which was less than half the alleged arrearage[4] in that case. A capias issued in each case on June 23, 1999, and Relator was arrested in El Paso, Texas on December 20, 1999. Even though each capias recited that Relator could be released upon his posting a cash bond in the required amounts, and although the words "CASH BOND ONLY" are prominently stamped across the face of each capias, Relator was released six hours later upon posting surety bonds.

1. It is not clear to us why the consolidation was sought in light of the specific language contained in the decree of divorce.

2. Three separate provisions of the Family Code authorize the issuance of a capias in the situation presented here. Section 157.066 provides that "[i]f a respondent who has been personally served with notice to appear at a hearing does not appear at the designated time, place, and date to respond to a motion for enforcement of an existing court order, regardless of whether the motion is joined with other claims or remedies, the court may not hold the respondent in contempt but may, on proper proof, grant a default judgment for the relief sought and issue a capias for the arrest of the respondent." Section 157.114 specifies that "[t]he court may order a capias to be issued for the arrest of the respondent if: (1) the motion for enforcement requests contempt; (2) the respondent was personally served; and (3) the respondent fails to ap-

pear." Lastly, Section 157.115(b) reiterates that "[i]f the respondent fails to appear, the court may not hold the respondent in contempt but may order a capias to be issued." Tex.Fam.Code Ann. §§ 157.066; 157.114; 157.115(b)(Vernon 1996).

3. Section 157.101(b) provides: "An appearance bond or security in the amount of $1,000 or a cash bond in the amount of $250 is presumed to be reasonable. Evidence that the respondent has attempted to evade service of process, has previously been found guilty of contempt, or has accrued arrearages over $1,000 is sufficient to rebut the presumption. If the presumption is rebutted, the court shall set a reasonable bond." Tex.Fam.Code Ann. § 157.101.

4. The order recites that the pleadings alleged child support arrears in the amount of $4,204.48 as of March 12, 1999.

Relator filed in this Court an application seeking habeas corpus relief alleging, among other things, that he has been held in contempt of court and committed to jail despite the lack of ten days' notice of the contempt hearing. Consequently, he maintains that the judgments of contempt and commitment are void. The Attorney General counters that Relator has not been adjudicated in contempt but instead was arrested pursuant to a capias issued in each case because of his failure to appear at the June 3 hearing. Implicit in this argument is the contention that habeas corpus relief is unavailable where Relator has been restrained by the issuance of a capias, which once executed can result in no further incarceration. We turn first to this issue.

## AVAILABILITY OF HABEAS RELIEF

■ A writ of habeas corpus is a collateral attack on the trial court's order, and it is the relator's burden to demonstrate that the order is void because it was either beyond the power of the court to issue it or because the order deprived the relator of his liberty without due process of law. *Ex parte Christensen*, 868 S.W.2d 376, 378 (Tex.App.—Houston [1st Dist.] 1993, orig. proceeding). Issuance of a capias is a sufficient restraint of liberty to justify habeas corpus relief. *In re Gonzalez*, 993 S.W.2d 147, 157 (Tex.App.—San Antonio 1999, orig. proceeding); *In re Clark*, 984 S.W.2d 644, 645 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding); *Ex parte Rosser*, 899 S.W.2d 382, 385 n. 6 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). Further, the Family Code mandates that if the respondent fails to appear at the hearing, the court shall order that the appearance bond or security be forfeited and that the proceeds of any judgment on the bond or security, not to exceed the amount of child support arrearages determined to exist, be paid to the obligee or to a person designated by the court. TEX.FAM.CODE ANN. 157.107(a).

■ A court which lacks jurisdiction over a contempt motion also lacks jurisdiction to order an arrest warrant. *In re Cannon*, 993 S.W.2d 354 (Tex.App.—San Antonio 1999, orig. proceeding). We now address Relator's argument that the SAPCR court lacked jurisdiction.

## CONTINUING, EXCLUSIVE JURISDICTION

In his first issue, Relator argues that the judgment of contempt and commitment entered in the SAPCR suit is void because of the consolidation of that case into the divorce suit by agreement of the parties. To address this argument, we begin with the concept of continuing, exclusive jurisdiction under the Texas Family Code.

### *The Concept*

■ Generally speaking, a court acquires continuing, exclusive jurisdiction over a suit affecting the parent-child relationship upon rendition of a final order. TEX.FAM.CODE ANN. § 155.001(a). On a showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, the court having continuing, exclusive jurisdiction shall transfer the proceedings to the divorce court. TEX.FAM.CODE ANN. § 155.201(a). This transfer proceeding is mandatory. If a motion to transfer is timely filed and no controverting affidavit is filed within the time prescribed, the court has a mandatory duty to transfer the case promptly without a hearing. TEX.FAM.CODE ANN. § 155.204(a); *In re Kramer*, 9 S.W.3d 449, 451 (Tex.App.—San Antonio 1999, orig. proceeding).

The underlying purpose of this fundamental principle is best explained by Justice Pope in *Trader v. Dear*, 565 S.W.2d 233 (Tex.1978):

This is another case in which the trial court has failed to recognize the legislative scheme that the court of continuing jurisdiction is the one that has the exclu-

sive power to reexamine its prior order which evaluated the best interest of the child. The Legislature by enacting the Family Code adopted a scheme for handling parent-child matters in a manner that avoids forum shopping, races to the courthouse, child snatching, and the harassment of a parent by the other parent's filing suits in random courts.

*Id.* at 235.

### Is It A Question of Jurisdiction or Venue?

The courts are in disagreement as to whether the concept is truly one of jurisdiction or is more closely akin to venue. In *Carroll v. Couch*, 624 S.W.2d 398 (Tex. App.—Fort Worth 1981, no writ), the parents were divorced in Tarrant County in 1977. The mother moved to Wichita County while the father moved to Oklahoma. The mother subsequently brought suit in Wichita County, first for the collection of child support arrearages and second, for termination of the father's parental rights. In response, the father sought to modify visitation and to recover attorney's fees. The trial court granted the termination and the father appealed. The court of appeals *sua sponte* reversed and dismissed the cause for want of jurisdiction:

> At no time was there a motion for transfer of the Tarrant County court's continuing jurisdiction, which it had obtained by reason of the original divorce decree. No question of jurisdiction was raised in the trial court by either the petitioner or the cross-petitioner. Both parties alleged that the court had jurisdiction as a result of prior proceedings.

*Carroll,* 624 S.W.2d at 399. The Court then noted that transfer would have been mandatory upon proper application. But because jurisdiction cannot be conferred by agreement, nor can lack of jurisdiction be waived, continuing jurisdiction rested exclusively with the court in Tarrant County. *Id.*

At the other end of the spectrum is the recent decision from the Austin Court of Appeals in *Ramsey v. Ramsey,* 19 S.W.3d 548 (Tex.App.—Austin 2000, no pet.h.). The Ramseys separated shortly after the birth of their child and at some point the mother began receiving public assistance. In 1991, the Attorney General filed a suit affecting the parent-child relationship in Williamson County seeking to recover from the father financial aid that the State had paid to the mother on behalf of the child. An agreed judgment was entered in that suit. Roughly a year later, the mother filed for divorce in Navarro County and represented in her pleadings that there were "no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child." This suit was dismissed for want of prosecution. Some months later, the father petitioned for divorce in Navarro County and he also represented that there was no court of continuing, exclusive jurisdiction. When the mother failed to appear for trial, the court entered a default judgment appointing the father sole managing conservator of the child. For the next several years, the father maintained sole custody of the child at all times, but at various points, the mother lived with them. Ultimately, the father and child moved to Plano, and the mother filed an application for writ of habeas corpus in Williamson County. She contended that the 1991 SAPCR order conferred continuing, exclusive jurisdiction in that court such that the conservatorship provisions of the final decree of divorce issued by the Navarro County court were void. The Williamson County suit was dismissed for want of jurisdiction, with that court concluding that continuing jurisdiction had vested in Navarro County. The mother appealed.

The appellate court at the outset noted that the 1991 SAPCR order was the product of an action initiated by a third party, the Attorney General, for the purpose of recovering state funds. There was no divorce suit pending at that time and the conservatorship issues were never in con-

tention. "Thus, the issue of conservatorship was merely ancillary to the primary purpose of the State's suit, which was to secure reimbursement of state money." *Ramsey*, 19 S.W.3d at 551. The court further faulted the mother for failing to challenge the jurisdictional allegations in the father's petition and failing to challenge the validity of the judgment through a motion for new trial, direct appeal, or bill of review. "Rather, appellant allowed the judgment to stand for approximately five years before seeking to have it declared void in a habeas corpus proceeding." *Ramsey*, 19 S.W.3d at 552. The court then recognized that if a court having potential jurisdiction over a case renders a judgment that is regular on its face and recites that the court's potential jurisdiction has been invoked, the judgment is voidable, not void, and may be set aside only by direct, not collateral, attack.

> Once the divorce decree, valid on its face, became final and was no longer vulnerable to direct attack, it superseded the 1991 SAPCR order and became the final order with regard to [the child's] custody and support.... It necessarily follows, then, that the Williamson Court was correct in concluding that the Navarro Court is the court of continuing, exclusive jurisdiction.

*Ramsey*, 19 S.W.3d at 554. Via footnote, the court opined "that the scheme employed by section 155.001 does not concern true *jurisdiction*, in the strictest sense of the word. Rather, it is more comparable to dominant jurisdiction or the rules of venue." [Emphasis in original]. *Ramsey*, 19 S.W.3d at 554 n. 7.

## Which Is The Court of Continuing, Exclusive Jurisdiction?

 We adhere to the belief that the concept of continuing, exclusive jurisdiction is truly jurisdictional. As for which court has exclusive jurisdiction here, we harken back to our earlier recitation of the contents of the final decree in the Aguilera divorce: "IT IS FURTHER ORDERED AND DECREED that Cause No. 90EM5–02118 in the 150th Judicial District Court of Bexar County, Texas involving the same parties as this action is hereby consolidated under this court and cause number in Bexar County, Texas."

 At the time of the parties' divorce on August 1, 1995, the transfer of proceedings was governed by former Section 11.06 of the Family Code.[5] Subsection (c) provided that "[o]n a showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, the court having continuing jurisdiction of a suit affecting the parent-child relationship shall transfer the proceedings to the court where the dissolution of the marriage is pending." The recitation in the decree concerning the existence of the prior order and the consolidation of the cases in the divorce court clearly indicates that the trial court had been made aware of the necessity for a mandatory transfer. While in most instances, the transfer order originates with the transferring court, it apparently is not unusual in Bexar County for the receiving court to sign the order. *See In re Garza*, 981 S.W.2d 438 (Tex.App.—San Antonio 1998, orig. proceeding)(transfer from the 225th to the 131st District Court of Bexar County effectuated by order signed by the presiding judge of the

5. Former Title 2 of the Texas Family Code was repealed and Title 5 was enacted by Acts 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex .Gen.Laws 113, eff. April 20, 1995. Former Section 11.06 is now contained in Tex. Fam.Code Ann. §§ 155.201 (Mandatory Transfer) and 155.202 (Discretionary Transfer). Section 3 of Acts 1995, 74th Leg., ch. 30 provided that "[t]he change in law made by this Act does not affect a proceeding under the Family Code pending on the effective date of this Act. A proceeding pending on the effective date of this Act is governed by the law in effect at the time the proceeding was commenced, and the former law is continued in effect for that purpose." Acts 1995, 74th Leg., R.S., ch. 20, § 3, 1995 Tex.Gen.Laws 282. Because the Aguilera divorce was pending on April 20, 1995, the former statute applies to this portion of our analysis.

131st). And while the "consolidation" may more appropriately have been termed a "transfer," we believe it accomplished the same purpose. Indeed, one court has described the legislative purpose behind the concept of continuing jurisdiction in the context of consolidation:

> Recognizing the need to commit the decision of all controversies that directly affect the welfare of particular children to a single court, the legislature enacted [former] section 11.05 providing for continuing jurisdiction.... Consolidation of the various suits into one suit affecting the parent-child relationship and investing only one court with power to rule on issues affecting the child provides an effective way to give courts access to more information and leaves them wide latitude in dealing with the best interests of the child.

*In re Miller*, 583 S.W.2d 872 (Tex.Civ. App.—Dallas 1979, orig. proceeding), *citing* Smith, Commentary on [former] Title 2, *Texas Family Code Symposium Supplement*, 8 TEX.TECH L.REV. 23 (1976). We therefore conclude that the divorce court acquired continuing, exclusive jurisdiction.

Our conclusion is not inconsistent with *Alexander v. Russell*, 699 S.W.2d 209 (Tex. 1985). There, the parties were divorced in the 243rd District Court with Russell appointed managing conservator of the child. Two years later, Alexander filed a motion to modify conservatorship, which was denied by the court. The order recited that "the 243rd Judicial District Court disqualified itself from hearing said cause, transferring the same to the 327th Family District Court, with consent of all parties." It further represented that "[j]urisdiction of the 327th Family District Court is not in issue nor is it being challenged by any party to the lawsuit." Russell later filed suit to terminate Alexander's parental rights. While the petition was captioned in the 327th District Court, "someone, somehow, and at some unknown time" changed the caption to reflect the 243rd District Court. The order of termination also referenced the 243rd District Court, but was signed by the presiding judge of the 327th District Court. Alexander appealed, complaining that the 327th District Court lacked jurisdiction. The Supreme Court reversed, noting that:

> Despite what the conservatorship order says about the 327th District Court having jurisdiction, there is no order transferring the cause to the 327th District Court. Thus, the 243rd District Court retained jurisdiction. Any attempted transfer of this cause to the 327th District Court was not for a reason authorized under [former] section 11.06 and therefore the judge had no authority to transfer the cause. If the judge of the 243rd District Court found it necessary to recuse himself, the proper procedure was to have another district judge preside in the 243rd District Court; not to transfer the cause.

*Alexander*, 699 S.W.2d at 210.

Nothing in former Section 11.06(c) suggests that the phrase "on a showing" may be satisfied only by filing a motion to transfer. Subsequent statutory amendments substantiate our conclusion. Current Section 155.201, entitled "Mandatory Transfer," requires the filing of a timely motion to transfer in subsection (b)[6] but imposes no such requirement in subsection (a), which tracks almost verbatim former Section 11.06(c):

**§ 155.201. Mandatory Transfer**

(a) On a showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, the court having continuing, exclusive jurisdiction of a suit affecting the parent-child relationship shall transfer the pro-

---

**6.** Subsection (b) provides: "If a suit to modify or a motion to enforce an order is filed in the court having continuing, exclusive jurisdiction of a suit, on the timely motion of a party the court shall transfer the proceeding to another county in this state if the child has resided in the other county for six months or longer." TEX.FAM.CODE ANN. § 155.201(b).

ceedings to the court in which the dissolution of the marriage is pending.

Further, while the facts in *Alexander* did not provide a statutory basis for transfer, the transfer here was mandatory.

We must next decide whether the capias issued by the SAPCR court is void because it was issued from a court other than the court of continuing, exclusive jurisdiction. To answer that question, we must outline the peculiarities of Bexar County's rotating, centralized docket. We turn once again to *In re Garza*, 981 S.W.2d 438 (Tex.App.—San Antonio 1998, orig. proceeding) for enlightenment.

### Bexar County Procedures

Elena Garza filed for divorce in February 1994 and the suit was assigned to the 225th District Court. In April 1995, the case was called for trial and formally transferred from the 225th to the 131st District Court by order signed by Judge John Gabriel, presiding judge of the 131st. Trial proceeded in the 131st and Judge Gabriel signed the final decree. By virtue of a clerical mistake, the caption of the decree referenced the 225th, not the 131st District Court.

Less than a year later, Ms. Garza filed an application for a protective order against her former husband. This case was assigned to the 37th District Court. When called for hearing, the matter was randomly assigned to be heard by Judge John Specia pursuant to Bexar County district courts' centralized, rotating civil docket system. *See* RULES OF PRAC., PROC. AND ADMIN. IN THE DIST. CTS. OF BEXAR COUNTY, TEXAS, R. 3.1–3.10 (1991). At the conclusion of the hearing, Judge Specia announced:

> I'm going to retain jurisdiction in this case against my better judgment, but there is a need for one judge to finish this matter. I don't think it needs to be bouncing around between different judges.

He then held both parties in contempt and denied Ms. Garza's request for an updated social study. She sought mandamus relief, complaining that Judge Specia lacked authority because the 131st District Court was the court of continuing, exclusive jurisdiction and Judge Specia was the presiding judge of the 225th, not the 131st.

The appellate court first determined that Judge Gabriel's order transferring the case into his court for trial, and his signature upon the final decree, conclusively established the 131st as the court of continuing, exclusive jurisdiction. "Once a court has acquired continuing, exclusive jurisdiction with respect to a particular SAPCR, no other court has jurisdiction over the suit unless jurisdiction has been transferred pursuant to the exclusive transfer provisions of the Family Code or an emergency exists." *In re Garza*, 981 S.W.2d at 440. The Court then addressed whether Judge Specia was acting on behalf of the 131st when he issued orders in the case. It next reviewed the "exchange-of-benches" provisions in the Government Code and in the Texas Constitution. The Constitution provides that "the District Judges may exchange districts, or hold courts for each other when they may deem it expedient ..." [7] while the Government Code expressly grants the district courts in Bexar County concurrent jurisdiction. TEX.GOV'T CODE ANN. § 24.139(c)(Vernon 1988). These constitutional and statutory provisions are also implemented through the Rules of Civil Procedure. *See* TEX. R.CIV.P. 330(e)-(h)(setting forth rules for transferring cases and exchanging benches). Based upon all of these provisions, the San Antonio Court of Appeals, sitting *en banc*, concluded that the case remained in the 131st District Court when Judge Specia entered his rulings.

> When Judge Specia was assigned to hear the matters underlying this mandamus, he was being assigned to the 131st District Court by the designated presid-

---

7. TEX. CONST. art. V, § 11.

ing judge of the non-jury civil docket pursuant to the civil district court local rules; *i.e.* exchanging benches, to rule on matters pending in the 131st. Local Rule 3.2 states that '[t]he Presiding Judge shall call the docket of cases set each day, and shall hear and dispose of the matters scheduled or in his discretion assign them to other *judges* who are available.' (emphasis added). It is significant that under the rule the 'Presiding Judge' is authorized to assign matters to other *judges* for disposition, not to other *courts*. This is consistent with the concept of judges exchanging benches; it is inconsistent with the notion of transferring cases to other courts for disposition. The assignment of the matter to Judge Specia was not intended to, nor did it cause, informally or otherwise, a transfer of the case into the 225th, where Judge Specia happened to be the presiding judge.

*Id.* at 441. Of significance to the case before us is the core holding:

Once exclusive jurisdiction has been established in a particular court, the record should be clear, in the absence of competent evidence to the contrary, that any district judge in the county acting in that case is doing so for that court.

*Id.* While acknowledging that the Family Code does not proscribe Bexar County's procedures, the court nevertheless recognized that the centralized, rotating docket has not adapted to the spirit of the Family Code's exclusive jurisdiction statute and the underlying public policy purposes. *Id.* at 442. In his concurring opinion, Justice Rickhoff remarked that the Bexar County system "renders the continuing, exclusive jurisdiction provisions meaningless." *Id.* at 443. He concluded:

But because judge shopping is a serious temptation for some parents and because we must focus on the children, SAPCRs should be determined not only

in the *court* of continuing, exclusive jurisdiction, but also by the same *judge*. Before another case like this one appears on this court's docket, the district judges should implement the spirit of the Family Code by creating a rule requiring the presiding judge to consider assigning motions and actions related to custody and support of children to the same judge who rendered earlier decisions related to those children.

*Id.* at 444.

Evidently, that has not happened, as this case illustrates. We have before us two show cause orders. Although one bears the caption of the 73rd District Court and one is captioned in the 150th District Court, both orders bear the signature of Judge Michael Peden, who is the Presiding Judge of the 285th District Court.[8] Similarly, both orders for writ of capias appear to be signed by Judge Martha Tanner of the 166th District Court.

 In applying *Garza* to the facts before us, we conclude that Judge Tanner was authorized to issue the orders for writ of capias as the duly designated judge assigned by the centralized, rotating docket. In other words, at the time of the issuance of the writs of capias, Judge Tanner was acting on behalf of the 73rd and 150th District Courts. However, our inquiry cannot end here. Because the 150th District Court, the SAPCR court, was not the court of continuing, exclusive jurisdiction, it had no jurisdiction over the enforcement proceedings. A court that lacks jurisdiction over a contempt motion lacks jurisdiction to order an arrest warrant. *In re Cannon,* 993 S.W.2d 354, 355 (Tex. App.—San Antonio 1999, orig. proceeding); *Ex parte Rosser,* 899 S.W.2d 382, 387 n. 13 (Tex.App.—Houston [14th Dist.] 1995, orig. proceeding). Because the capias issued from the 150th District Court is void, we sustain Relator's first issue.[9] Howev-

---

**8.** Judge Andy Mireles is the Presiding Judge of the 73rd District Court while Judge Janet Littlejohn presides over the 150th District Court.

**9.** We reiterate that despite the characterization contained in Relator's application that "the Judgment of Contempt and Commit-

er, the capias issued from the 73rd District Court is valid. We express no opinion as to whether the 73rd District Court may adjudicate alleged arrearages under the SAPCR order by virtue of the transfer/consolidation language in the decree as that issue is not before us.

## THE TEN DAY NOTICE REQUIREMENT

In his second issue, Relator argues that "[t]he Judgments of Contempt" are void because he did not have ten days' notice of the enforcement hearing as required by Section 157.062 of the Texas Family Code.[10] Relator is not entitled to discharge in a habeas corpus proceeding unless the judgment ordering him confined is void either because it exceeded the court's power or because it deprived Relator of his liberty without due process of law. *Ex parte Davis*, 161 Tex. 561, 344 S.W.2d 153, 154–55 (Tex.1961); *Ex parte Friedman*, 808 S.W.2d 166, 168 (Tex. App.—El Paso 1991, orig. proceeding). The failure to give the notice required by Section 157 .062 does not render the proceeding void unless the lack of notice amounts to a denial of constitutional due process. *Ex parte Davis*, 344 S.W.2d at 155; *Ex parte Sturdivant*, 544 S.W.2d 512, 513–14 (Tex.Civ.App.—Texarkana 1976, orig. proceeding).

Relator repeatedly complains in his sworn petition that the trial court conducted a hearing in his absence on June 3 and issued judgments of contempt and commitment despite the failure to provide him with the notice required by Section 157.062(c). According to Relator, he was confined pursuant to these commitments until he posted a surety bond. Relator claims without further explanation that

copies of the judgments and commitments are "unavailable." The Attorney General admits that Relator was served with the show cause order less than ten days before the date set for the enforcement hearing, but points out that the trial court never held a hearing on the enforcement motions, nor did it hold Relator in contempt or issue judgments of contempt. The Attorney General further posits that habeas corpus relief must be denied because the trial court acted within its authority in ordering the issuance of a capias due to Relator's failure to appear at the hearing. The record before us, which includes certified copies of the docket sheets, the orders authorizing issuance of the writ of capias, and the capias issued in each case, does not support Relator's factual assertions.

The certified copies of the docket sheets do not reflect that the trial court held a hearing on June 3, nor that it entered judgments of contempt and commitment. Even if the docket sheet entries were insufficient, standing alone, to establish that the trial court did not enter judgments of contempt, any doubt is erased by the affidavit of the Bexar County Deputy District Clerk, Gary Gauntt:

> I have searched the court's records in Cause Number 1990–EM5–02118 and Cause Number 1994–CI–09420 and the documents contained therein do not include a Judgment of Contempt or Order of Commitment signed in June, 1999 or thereafter.

Consistent with the State's position, the docket sheets indicate that the court issued orders in each case granting the writ of capias on June 21, 1999. The record also contains the orders for writ of capias signed by the trial court on June 21, 1999, and entered due to Relator's failure to

---

ment" is void, there is no judgment of contempt and no commitment. Our opinion addresses only the capias.

**10.** Section 157.062(c) provides: "Notice of hearing on a motion for enforcement of an existing order providing for child support or possession of or access to a child shall be given to the respondent by personal service of a copy of the motion and notice not later than the 10th day before the date of the hearing." Tex.Fam.Code Ann. § 157.062(c)(Vernon 1996).

appear at the June 3 hearing. A capias issued in each cause number on June 23 and Relator was arrested on December 20.

■ Because Relator focuses on nonexistent judgments of contempt and commitment, he makes no claim in his application that the issuance of the capias in these cases deprived him of due process.[11] Even so, we will examine these issues assuming that Relator would have argued that a capias may not be issued if the respondent has less than ten days' notice of the hearing. When an obligor who has been personally served fails to appear, the court may not hold the obligor in contempt but may, as in this case, issue

a capias for his arrest. Tex.Fam.Code Ann. 157.066 [12]; *In re Gonzalez*, 993 S.W.2d 147, 157 (Tex.App.—San Antonio 1999, no pet.). While finding the obligor in contempt on less than ten days' notice violates due process, there is no constitutional prohibition against compelling him to appear pursuant to the show cause order even if he has not been provided with the requisite notice. As the Supreme Court observed in *Davis*, Relator did not have the option of ignoring the show cause order as he might ignore citation in a civil suit because he is commanded by the court to appear, and if he ignores the command he may be brought in under a capias.[13] *Davis*, 161 Tex. 561,

**11.** During oral argument, Relator observed that the precepts to serve the show cause orders in both cases were file stamped "June 10, 1999." He argued that these notations indicate that the proper returns of service were not on file at the time the writs of capias were issued. We disagree for three reasons. First, the writs were issued on June 23, 1999, not during the June 3 hearing. Second, while the service return on each precept is blank in the record tendered by Relator, the back side of each show cause order bears the following notation:

Delivered this 26 day of May 1999
Sheriff of El Paso County, Texas
By: R Galvan
 Deputy

The date and signature are handwritten, not typed. Third, by post-submission brief, the Attorney General has tendered a copy of the executed precept, which actually bears a file-stamp of May 10, 1999 at 5:01 p.m., not June 10. The service return, bearing the stamp of Leo Samaniego, Sheriff of El Paso County, Texas, and signed by "R. Galvan 1290" provides:

This process was received on the 10 day of May 1999, at 5:01 p.m.

[X] I served a true copy of this process endorsed with the date of delivery, together with the .accompanying documents, on JOSE DE JESUS AGUILERA in person at:

 [X] residence; 3501 Keltner # 111
 [_] place of employment; or
 [_] other_____
on the 26 day of May, 1999 at 12:10 p.m.

Because the file-stamp and the service return coincide to the minute, it thus appears that the May 10, 1999 file-stamp refers to the date the process was received by Deputy Galvan,

not the date that the service return was filed with the court. No document in this Court's file bears a file-stamp of

**12.** Section 157.066 provides: "If a respondent who has. been personally served with notice to appear at a hearing does not appear at the designated time, place, and date to respond to a motion for enforcement of an existing court order, regardless of whether the motion is joined with other claims or remedies, the court may not hold the respondent in contempt but may, on proper proof, grant a default judgment for the relief sought and issue a capias for the arrest of the respondent." Tex.Fam.Code Ann. § 157.066.

**13.** We pause to note the competing policy issues illustrated by these facts. Despite efforts by Relator's counsel to contact the Office of the Attorney General and reset the hearing to permit adequate notice, he received no response. In fact, the assistant Attorney General indicates in responsive briefing that the assigned attorney did not even receive the facsimile until June 18, more than two weeks after the hearing. We perceive little benefit in requiring a support obligor, who is allegedly already in arrears, to travel more than 500 miles to attend a hearing which everyone agrees could not have been heard on the day it was set. Such an undue expense—calculated in terms of transportation costs, lost time from employment, and attorney's fees—makes little sense. On the other hand, we also recognize the dilemma facing the Office of the Attorney General, which is already overworked and understaffed. Relator's appearance at the June 3 hearing would have permitted the case to be reset, and Relator ordered to appear at a date and time certain, without the necessity of additional personal service.

344 S.W.2d at 155–56 (holding that relator who appeared at hearing without counsel on only two days' notice could not be said to have waived his rights or consented to trial based on his failure to protest or demand further time because the show cause order compelled his attendance). Issue Two is overruled.

## CONCLUSION

Although the 73rd District Court of Bexar County acted within its authority under Section 157.066 in issuing the capias, the capias issued by the 150th Judicial District Court is void. The application is conditionally granted in part. We direct the 150th District Court to vacate the capias. The writ will issue only if the court fails to do so.