Priscilla CELESTINE, Appellant,

v.

**DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,**
Appellee.

No. 01–09–00693–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 15, 2010.

Shonda M. Jones, Law Office of Shonda Jones, Houston, TX, for Appellant.

Brian J. Fischer, Sandra D. Hachem, Senior Assistant County Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HANKS, and HIGLEY.

## OPINION

EVELYN KEYES, Justice.

Appellant, Priscilla Celestine, appeals the dismissal of her petition for adoption and the trial court's denial of her motion for new trial. We affirm the judgment of the trial court.

## BACKGROUND

On August 29, 2006, the 313th Judicial District Court of Harris County issued a final decree terminating the parental rights of DDD's, DJD's, JID's and CRD's biological parents and appointing the Department of Family and Protective Services (DFPS) as the children's sole managing conservator.[1] DFPS had placed the

---

1. According to the affidavit attached to DFPS's Original Petition for Protection, the children's biological mother—a long-time crack cocaine abuser—had an extensive histo-

ry with the agency dating back to 1985. Over the course of the previous twenty years, the agency had successfully petitioned to have the mother's parental rights terminated with re-

children with Celestine while the termination proceeding was pending. In December 2006, DFPS removed the children from Celestine's home after a caseworker learned that Celestine had left the children alone with their biological mother.[2] It is undisputed that the children had only lived with Celestine for five and a half months prior to their removal.

On May 17, 2007—five months after the children were removed from her home—Celestine, claiming to be a maternal aunt to two of the children, filed a petition to terminate DFPS's conservatorship and adopt all four children.[3] Although Celestine attempted to file her petition for adoption under cause number 2005–03847J (termination proceeding), the clerk's office corrected the error and assigned Celestine's petition a new cause number, 2007–29969.[4] Celestine subsequently filed three amended petitions.[5] DFPS responded to all three by filing general denials and special exceptions asserting that Celestine failed to plead any facts that would establish that she had standing to bring the suit. In its response to Celestine's Third Amended Petition, DFPS also moved to strike the pleadings. After a hearing before Associate Judge Robert Molder of the 313th Judicial District Court, DFPS's motion to strike was denied.[6] DFPS subse-

gard to her three oldest children—one of the children had sustained multiple bone fractures prior to his removal from the mother's care. Apparently undeterred, the mother proceeded to have four more children—DDD, DJD, JID, and CRD. Although DFPS became involved with the family in 2004 when JID tested positive for cocaine at the time of his birth, the children were allowed to remain in the care of the mother's "long-term paramour," Nathaniel Davis. When the biological mother tested positive for cocaine after the birth of her seventh child in 2006, DFPS removed the four remaining children from her care and successfully petitioned to have her parental rights terminated.

2. The record indicates that Celestine objected to the children's removal from her home and the 313th District Court held a hearing on the issue. During that hearing, a caseworker testified that she removed the children after she visited Celestine's home and found the biological mother there. The caseworker testified that she had previously told Celestine that the biological mother could not have contact with the children. Celestine claimed that she was not at home when the caseworker visited and that her daughter had allowed the biological mother to see the children, not her.

3. Despite having claimed to be a maternal aunt to two of the children in her petition, Celestine's brief refers to her as the "paternal aunt of three of the four children", the "maternal aunt" and the "paternal grandmother."

Although it is certainly not dispositive with regard to her relationship to the children, the final termination decree lists Clarence Celestine as the biological father of the two youngest children—JID and CRD.

4. See Tex. Fam.Code Ann. § 102.013(b) (Vernon 2008) (requiring clerk to assign new docket number to any petition for adoption).

5. All of Celestine's amended petitions were combined with a request from a second petitioner, Nathaniel Davis, to terminate "child support" payments he was making to an unidentified person, presumably for the children's benefit. Other than stating that Davis was paying child support for the children, neither amended petition identified Davis' relationship to the children, if any. An affidavit attached to the Original Petition for Protection filed in the termination case, however, indicates that the children had lived with Davis, the children's biological mother's "long-term paramour." According to DFPS, Celestine later "orally abandoned [her] pleadings that relate to Nathaniel Davis and child support." Nathaniel Davis is not a party to this appeal.

6. Although evidence in the record indicates that a hearing on DFPS's motion to strike was held, a copy of the transcript from that hearing is not included in the appellate record. The record indicates that the trial court denied DFPS's motion because it found that Celestine was a person who had "substantial

quently filed its First Amended Answer to Celestine's Third Amended Petition. In its amended answer, DFPS stated that, as the children's Sole Managing Conservator, it did not consent to Celestine's adoption of the children and, furthermore, that waiver of consent was not authorized because DFPS had good cause to refuse consent.

For reasons not fully explained by either the briefs or the clerk's record in this matter, Celestine's petition came before Judge Frank Rynd, presiding judge of the 309th District Court of Harris County.[7] Celestine argues in her supplemental brief that the District Clerk's office must have erroneously assigned her case to the 309th District Court when it assigned her petition a new cause number, 2007–29969. On August 25, 2008, Judge Rynd signed an order of dismissal for want of prosecution under the corrected cause number and style of Celestine's petition for adoption. The order of dismissal, which was filed with the District Clerk's office on August 27, 2008, indicates that neither Celestine nor her counsel appeared on April 25, 2008 for a trial on the merits. No motion to reinstate was filed with respect to Judge Rynd's order.

Despite Judge Rynd's order of dismissal, a hearing on Celestine's petition for adoption was held on October 1, 2008 before Associate Judge Robert Molder of the 313th Judicial District Court, presided over by Judge Pat Shelton.[8] After the hearing, the 313th District Court signed an order dismissing Celestine's petition with prejudice, and without explanation. Celestine promptly filed a motion for new trial before the 313th District Court, which, after a hearing, was also denied without explanation. Celestine now appeals the October 2008 order of the 313th District Court dismissing her petition for adoption and the subsequent denial of her motion for new trial/reconsideration.

## SUBJECT MATTER JURISDICTION

As a preliminary matter, we must determine whether the 313th District Court had jurisdiction to enter the October 1, 2008 order of dismissal. DFPS argues that the October 1, 2008 order of dismissal—the only order of dismissal Celestine is appealing—was appropriate because the case had already been dismissed on August 25, 2008 for want of prosecution by Judge Rynd, the presiding Judge of the 309th District Court, who was sitting on behalf of the 313th District Court, pursuant to the exchange-of-benches doctrine. According to DFPS, by the time Associate Judge Molder heard the motion to dismiss on October 1, 2008, the 313th District Court's plenary power had already expired, thus depriving the court of jurisdiction over the case. Celestine, on the other hand, argues that Judge Rynd was not acting on behalf of the 313th District Court, as DFPS contends, but, instead, was acting on behalf of the 309th District Court because the Dis-

---

past contact with the child[ren] sufficient to warrant standing" to petition for their adoption, by virtue of the fact that the children had resided with her for five and a half months before they were removed by DFPS. *See* Tex. Fam.Code Ann. § 102.005(5) (Vernon Supp. 2009).

7. Celestine also (mistakenly) argues that a lone docket entry is the only evidence the 309th District Court dismissed her petition; according to Celestine, the 309th never signed

an order dismissing her petition. The presiding judge of the 309th District Court did indeed sign an order dismissing Celestine's petition. Copies of the order are included in the clerk's record on appeal.

8. Although the Reporter's Record indicates that the hearing was held on October 14, 2008, appellant's motion for new trial (filed October 7, 2008), which was filed as a direct result of the final hearing, indicates that the hearing was actually held on October 1, 2008.

trict Clerk's office had erroneously assigned her petition to Judge Rynd's court, the 309th District Court. According to Celestine, the 309th District Court did not have jurisdiction to dismiss her petition for adoption because the 313th District Court was the court of continuing and exclusive jurisdiction. Although she does not expressly state as much, we understand the remainder of her argument to be that the August 25, 2008 order issued by Judge Rynd was void for want of jurisdiction (rather than merely "voidable"); therefore, the district court's plenary power had not expired by the time Associate Judge Molder dismissed her petition, and Associate Judge Molder could not have properly dismissed her petition on that basis.

### Exchange of Benches Doctrine

■ The Texas Constitution and Government Code give district courts broad discretion to exchange benches and enter orders on other cases in the same county, even without a formal order memorializing the exchange or transfer. *In re U.S. Silica Co.*, 157 S.W.3d 434, 439 (Tex.2005); TEX. CONST. art. V, § 11 ("[T]he District Judges may exchange districts, or hold courts for each other when they may deem it expedient"); TEX. GOV'T CODE ANN. § 74.094(a) (Vernon 2005) (stating that district court judges may "hear and determine a matter pending in any district or statutory county court in the county regardless of whether the matter is preliminary or final or whether there is a judgment in the matter. The judge may sign a judgment or order in any of the courts regardless of whether the case is transferred. The judgment, order, or action is valid and binding as if the case were pending in the court of the judge who acts in the matter."); TEX. GOV'T CODE ANN. § 24.303(a) (Vernon 2004) (allowing district court judges in multi-court counties to transfer any civil or criminal matters on their docket to another district court in the same county and to "exchange benches or districts from time to time"). The Texas Rules of Civil Procedure further enforce this rule. In counties with more than one district court, "any judge may hear any part of any case." *See* TEX.R. CIV. P. 330(g). And Rule 330(h) provides that in such counties, "any judge may hear ... all preliminary matters, questions and proceedings and may enter judgment or order thereon in the court in which the case is pending without having the case transferred to the court of the judge acting.... Any judgment rendered or action taken by any judge in any of said courts in the county shall be valid and binding." TEX.R. CIV. P. 330(h).

Although the Texas Family Code contains a unique provision giving a court continuing and exclusive jurisdiction over matters involving the welfare of a child upon the rendition of a final order in an original suit affecting a parent-child relationship, *see* TEX. FAM.CODE ANN. § 155.001 (Vernon 2008), this does not preclude the application of the exchange-of-benches doctrine in such cases. *See In re Garza*, 981 S.W.2d 438, 441 (Tex.App.-San Antonio 1998, orig. proceeding) (holding that when district court has continuing and exclusive jurisdiction over SAPCR matter, judge of another district court in same county may rule in matter, so long as record is clear that judge is acting on behalf of court with continuing and exclusive jurisdiction).

■ It is undisputed that the 313th Judicial District Court has exclusive and continuing jurisdiction in the present case by virtue of the fact that it issued the final order in the termination proceeding. *See* TEX. FAM.CODE ANN. § 155.001. If Judge Rynd was acting on the behalf of the 313th, the court of continuing and exclusive jurisdiction—rather than acting on the

behalf of the 309th—there would be no question that the August 25, 2008 order he signed dismissing Celestine's petition for want of prosecution was valid and enforceable as an order of the 313th District Court. Thus, the initial issue before this Court is whether the record demonstrates that Judge Rynd was acting on behalf of the 309th or the 313th District Court when he issued his order dismissing Celestine's petition.

The August 25, 2008 order dismissing Celestine's petition was signed by Judge Rynd in his capacity as "Judge." The order's caption suggests that the matter was pending before the 309th District Court. The District Clerk's record also contains docket sheets indicating that Celestine's adoption case may have been mistakenly assigned to the 309th District Court when the District Clerk's office assigned her petition for adoption a new cause number, 2007–29969. Moreover, docket sheets from the 313th District Court, which are also contained in the District Clerk's record, indicate that the 313th was docketing activities relating to Celestine's adoption petition under the 2005 case number assigned to the termination proceeding rather than under the 2007 case number assigned to the adoption proceeding. Standing alone, not one of these facts would be sufficient to conclusively defeat DFPS's contention that the order resulted from a proper exchange of benches because any one of them could have resulted from a simple clerical error. Nevertheless, these facts, coupled with the subsequent conduct of the 313th District Court, the court of continuing and exclusive jurisdiction, and the conduct of the parties, demonstrate that Judge Rynd was not acting on behalf of the 313th when he

issued the August 25, 2008 order dismissing Celestine's adoption petition for want of prosecution.

The record in this matter demonstrates that Associate Judge Molder, who was acting on behalf of Judge Shelton of the 313th District Court, and the parties continued to proceed with the case in the 313th District Court as if Judge Rynd's order of dismissal had never happened. First, the 313th District Court scheduled Celestine's petition for a trial on merits on October 1, 2008—over a month after Judge Rynd issued his order of dismissal.[9] Second, when the parties appeared before Associate Judge Molder on October 1, the attorney ad litem asked the court to dismiss Celestine's petition because Celestine acknowledged that she did not meet the Family Code's requirement that the children must have resided with her for six months prior to adoption; Associate Judge Molder held an impromptu hearing on the issue. Although they discussed the procedural history of the case at the October 1 hearing, neither the parties nor Associate Judge Molder made any mention of Judge Rynd's order of dismissal for want of prosecution or of the April 2008 trial in the 309th at which Celestine and her counsel failed to appear, providing the grounds for Judge Rynd's dismissal. Finally, neither the parties nor Associate Judge Molder made any mention of Judge Rynd's order of dismissal when Associate Judge Molder presided over a hearing on Celestine's motion for new trial almost a month later on October 29, 2008. Under these circumstances, we cannot say that it is clear from the record that Judge Rynd was acting on behalf of the 313th District Court—the court with continuing and exclusive jurisdiction. *See In re Garza*, 981 S.W.2d at

---

9. The reporter's record suggests that the trial did not go forward on October 1, 2008 because DFPS informed Associate Judge Molder that it needed more time to properly notice to all necessary parties and it requested a new trial setting in November or December.

441; *see also Alexander v. Russell,* 699 S.W.2d 209, 210 (Tex.1985) (requiring record in SAPCR cases to "show that the court with continuing and exclusive jurisdiction was actually the court which exercised jurisdiction"). Accordingly, we determine that Judge Rynd was acting on behalf of the 309th District Court when he dismissed Celestine's petition for adoption.

### Continuing and Exclusive Jurisdiction

Having determined that Judge Rynd issued the August 25, 2008 order dismissing Celestine's petition on behalf of the 309th District Court, we must now determine whether the 309th had jurisdiction over the matter. As a district court in Harris County, the 309th ordinarily has jurisdiction over adoption proceedings. *See* TEX. CONST. art. V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body."); TEX. GOV'T CODE ANN. § 24.601(b) (Vernon 2004) (stating that "family district courts" have primary responsibility for cases involving family law matters, including adoptions and other suits affecting parent-child relationship); TEX. GOV'T CODE ANN. §§ 24.607, 24.617, 24.621 (Vernon 2004) (identifying 309th and 313th as family district courts); *see also* TEX. GOV'T CODE ANN. § 24.601(a) (Vernon 2004) (stating that family district court's "jurisdiction is concurrent with that of other district courts in the county in which it is located").

■ The question before this Court now is whether the 313th District Court's exclusive and continuing jurisdiction over the children deprived the 309th District Court of jurisdiction in this particular case, as Celestine contends. Although this is a matter of first impression for this Court, we note that the other courts of appeals that have already addressed this issue disagree as to whether the Family Code's continuing and exclusive jurisdiction provision is truly jurisdictional or merely a matter of dominant jurisdiction, more closely akin to the rules of venue. *Compare Ramsey v. Ramsey,* 19 S.W.3d 548, 551–56 (Tex.App.-Austin 2000, no pet.) (conservatorship provisions of divorce decree rendered by different court from one that had rendered earlier SAPCR order were not void and thus not vulnerable to collateral attack) *with In re Aguilera,* 37 S.W.3d 43, 49, 52–53 (Tex.App.-El Paso 2000, orig. proceeding) (stating that concept is truly jurisdictional; holding order issued by one district court void for want of jurisdiction when another district court in same county had continuing and exclusive jurisdiction over matter).

The Fort Worth Court of Appeals addressed a similar issue in *Carroll v. Couch,* 624 S.W.2d 398 (Tex.App.-Fort Worth 1981, no writ). Although the court of appeals in *Carroll* never expressly reached the 'void' versus 'voidable' issue because the appellant challenged the order on direct appeal rather than by collateral attack, the court's analysis suggests that the court would be likely to agree with the El Paso Court of Appeals' conclusion that such orders are void. In *Carroll,* the court of appeals reversed a Wichita County court's judgment terminating a father's parental rights after the court of appeals determined that a Tarrant County court had continuing and exclusive jurisdiction over the children by virtue of a divorce decree it had issued years earlier. *See id.* at 398–99. The court of appeals also determined that while the Tarrant County court was required to transfer the case to the Wichita County court if requested to do so, because the children resided in

Wichita County at the time the case was filed, no request for transfer was ever made. *See id.* As a result, the matter was never transferred to the Wichita County court. *See id.* The court of appeals further reasoned that because the Tarrant County court remained the court of continuing and exclusive jurisdiction, the Wichita County court did not have jurisdiction in the case when it issued the order terminating the father's parental rights. *See id.* at 399.

After reviewing the cases and arguments supporting both sides of the issue, we determine that the Family Code's continuing and exclusive jurisdiction provision is a matter of true jurisdiction. Thus, when one court has continuing and exclusive jurisdiction over a matter, any order or judgment issued by another court pertaining to the same matter is void. This position best comports with the legislative philosophy behind the Family Code's exclusive and continuing jurisdiction provisions, which have been described as follows:

> Recognizing the need to commit the decision of all controversies that directly affect the welfare of particular children to a single court, the legislature enacted section [155.001] providing for continuing jurisdiction. Before the passage of section [155.001], conflicts between courts of parallel jurisdiction had led to multiple suits concerning the proper disposition of issues affecting children. Consolidation of the various suits into one suit affecting the parent-child relationship and investing only one court with power to rule on issues affecting the child provides an effective way to give courts access to more information and leaves them wide latitude in dealing with the best interests of the child.

*In re Miller,* 583 S.W.2d 872, 873 (Tex.Civ. App.-Dallas 1979, no writ); *see also Trader*

*v. Dear,* 565 S.W.2d 233, 235 (Tex.1978) ("The Legislature by enacting the Family Code adopted a scheme for handling parent-child matters in a manner that avoids forum shopping, races to the courthouse, child snatching, and the harassment of a parent by the other parent's filing suits in random courts"); *In re Garza,* 981 S.W.2d at 442 (J. Rickoff, concurring) ("Before the Legislature enacted the continuing, exclusive jurisdiction provisions, suits affecting one child were decided by various judges in various courts, with the effect that '[j]udges passing on some facet of a child's welfare were cast into the position of a blind man touching and describing an elephant. [I]nvesting only one court with power to rule on issues affecting the child was predicted to be an effective way to give courts access to more information and leave them the widest latitude in dealing with the child's best interests.' ") (citations omitted). Accordingly, we determine that the 309th District Court did not have jurisdiction when it dismissed Celestine's petition for adoption because the 313th District Court had continuing and exclusive jurisdiction over the children. Thus, the August 25, 2008 order attempting to dismiss Celestine's petition is void.

### Standing

■ This brings us to the October 1, 2008 order issued by Associate Judge Molder dismissing Celestine's adoption petition with prejudice. Before we can delve into the merits of Celestine's arguments, however, we must first address yet another preliminary matter: Celestine's standing to file the petition for adoption.

DFPS contends that Celestine did not have standing to file her petition for adoption pursuant to section 102.006. If DFPS is correct, and Celestine does not have standing, then the trial court's dismissal of her petition was proper. *See In re C.M.C.,* 192 S.W.3d 866, 870 (Tex.App.-Texarkana

2006, no pet.). Section 102.006, entitled "Limitations on Standing," provides in pertinent part that if the parent-child relationship between the child and every living parent of the child has been terminated, an original suit may not be filed by "a family member or relative by blood, adoption, or marriage of either a former parent whose parent-child relationship has been terminated or of the father of the child." Tex. Fam.Code Ann. § 102.006(a)(3) (Vernon 2008). These limitations, however, do not apply if the petitioner "has a continuing right to possession of or access to the child under an existing court order" or "has the consent of the child's managing conservator, guardian, or legal custodian to bring the suit." Tex. Fam.Code Ann. § 102.006(b)(1)-(2) (Vernon 2008).

In the present case, the parental rights of all of the children's parents were terminated on August 29, 2006. Celestine, who claims to be related to at least one parent of two or more of the children, filed an original petition seeking to adopt all four of the children. Although DFPS had placed the children with Celestine while the termination proceeding was pending, it is undisputed that the children were removed from Celestine's home in December 2006 and that Celestine did not have a continuing right to possession of or access to the children under a court order at the time she filed her original petition for adoption

in May 2007. It is also undisputed that Celestine did not have the consent of the children's managing conservator, DFPS, to file this petition for adoption.[10] Thus, under a plain reading of section 102.006, Celestine does not have standing to initiate a suit for adoption, at least with respect the children to whom she is related. *See* Tex. Fam.Code Ann. § 102.006(a)(3).

The nature and existence of Celestine's familial relationship with respect to each of the four children, however, cannot be determined from the appellate record. Accordingly, we are unable to determine whether Celestine actually has standing to file her petition. However, even if we assume that Celestine has standing with respect to one or more of the children, the trial court's dismissal of her petition for adoption would still be proper. *See generally Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex. 1995) (assuming that petitioner had standing and affirming summary judgment against petitioner); *see also O'Quinn v. State Bar of Tex.,* 763 S.W.2d 397, 403 (Tex.1988) (assuming that party had standing in order to decide that challenge lacked merit).

## MERITS OF DISMISSAL

On appeal, Celestine raises three challenges to the dismissal of her petition.

---

**10.** Celestine does not challenge DFPS's refusal to consent to *standing* under *section 102.006.* She does, however, challenge DFPS's refusal to consent to the *adoption* under *section 162.010.* Pursuant to section 162.010, the children's managing conservator, DFPS, must file a written consent to the adoption. Tex. Fam.Code Ann. § 162.010(a) (Vernon 2008). The court, however, may waive the consent requirement if it finds that the consent has been refused or revoked without good cause. *Id.* Furthermore, a "hearing on the issue of consent shall be conducted by the court without a jury." *Id.* Although section 162.010 requires the court to hold a

hearing to determine whether DFPS has refused or revoked its consent to the adoption without good cause, section 102.006 contains no such provisions with respect to standing. *Cf. In re A.M. and B.M.,* 312 S.W.3d 76, 83–85 (Tex.App.-San Antonio 2010, pet. filed) (refusing to import section 162.010's consent to adoption safeguards into section 102.006; holding trial court did not err in refusing to hear evidence regarding whether DFPS wrongfully withheld consent under section 102.006, because no hearing was required by that section and DFPS's motivations were irrelevant with respect to issue of standing).

Specifically, Celestine contends that the trial court committed reversible error (1) by allowing the ad litem to present an oral motion to dismiss her petition for adoption in violation of Texas Rule of Civil Procedure 90; (2) by ruling that the child must reside with the prospective adoptive parent for six months prior to adoption pursuant to section 162.001, when the applicable six-month requirement was actually set forth by section 162.009; and (3) by ruling that it would not grant a hearing pursuant to section 162.010 to determine whether or not DFPS was withholding its consent to the adoption.

■ In her first issue, Celestine alleges that the trial court committed reversible error by allowing the ad litem to present an oral motion to dismiss her petition for adoption in violation of Texas Rule of Civil Procedure 90. *See* TEX.R. CIV. P. 90 ("Every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the … judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account….") The ad litem's argument, however, was that, having acknowledged that she did not meet a statutory six-month residency requirement, Celestine was not eligible to adopt the children. The ad litem never alleged that Celestine failed to plead the six-month requirement, nor did he allege the existence of any defect, omission, or fault with respect to Celestine's pleadings. Accordingly, we conclude that the ad litem was not raising a pleading defect in his motion, and therefore he was not required to raise his challenge in writing pursuant to Texas Rule of Civil Procedure 90.

We overrule Celestine's first issue.

In her second and third issues, Celestine argues that the trial court committed re-versible error when it (1) ruled that a child must reside with the prospective adoptive parent for six months prior to the adoption pursuant to section 162.001, when the applicable six-month requirement was actually set forth by section 162.009, and (2) denied her request for a hearing pursuant to section 162.010 because it would not find that DFPS was withholding its consent without good cause. Any statements the trial court made during the hearing, however, are irrelevant for purposes of our review of the propriety of the court's dismissal of Celestine's petition.

■ Regardless of what the trial court may have said, or what the parties may have argued at the hearing, the trial court did not prepare any findings of fact or conclusions of law in this case, nor did it specify which ground it was relying upon when it ordered the dismissal of Celestine's adoption petition. *See In re W.E.R.,* 669 S.W.2d 716, 716 (Tex.1984); *Richardson v. Johnson & Higgins of Tex., Inc.,* 905 S.W.2d 9, 11 (Tex.App.-Houston [1st Dist.] 1995, writ denied). In such cases, the judgment of the trial court implies all necessary fact findings in support of the judgment, and we will affirm the judgment of the trial court if it can be upheld on any legal theory that finds support in the evidence. *See In re W.E.R.,* 669 S.W.2d at 717. In determining whether some evidence supports the judgment and the implied findings of fact, "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950) (quoting *Austin v. Cochran,* 2 S.W.2d 831, 832 (Tex. Comm'n App.1928)). Accordingly, we may affirm the judgment if there is at least some evidence in the record supporting dismissal of Celestine's petition under either section 162.009 or section

162.010, regardless of any oral statements made by the trial court judge. *See In re W.E.R.*, 669 S.W.2d at 716 (stating that trial court judges oral statements may not be considered as substitute for findings of fact or conclusions of law).

The trial court must grant an adoption if it finds that the requirements for adoption have been met and the adoption is in the best interests of the child. *See* TEX. FAM. CODE ANN. § 162.016(b) (Vernon 2008). Section 162.009 ("Residence with Petitioner") and section 162.010 ("Consent Required") are two such statutory prerequisites. *See* TEX. FAM.CODE ANN. §§ 162.009, 162.010 (Vernon 2008). Pursuant to section 162.009(a), a court may not grant an adoption until the child has resided with the petitioner for at least six months. *See* TEX. FAM.CODE ANN. § 162.009(a). On the request of the petitioner, the court may, however, waive this six-month requirement if it finds that waiver is in the child's best interest. *See* TEX. FAM.CODE ANN. § 162.009(b). Celestine alleges that because section 162.009(b) allows the trial court to waive the six-month requirement if it finds that waiver is in the child's best interest, she was therefore entitled to an opportunity to· present evidence and be heard on the issue of whether waiver was indeed in the children's best interest. Although she has not directed us to any legal authority supporting her position, we will nonetheless address Celestine's argument in the interests of justice and judicial economy. *See generally* TEX.R.APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex.1994); *Blanks v. Liberty Mut. Fire Ins. Co.*, 196 S.W.3d 451, 452 (Tex.App.-Dallas 2006, pet. denied).

We have been unable to locate any appellate court cases analyzing a trial court's dismissal of a petition for adoption under section 162.009 or its predecessor section

14.06. However, due to the discretionary nature of the trial court's determination and the similarity to review of best interests findings in other family law contexts, we conclude that the proper standard of review in such instances is abuse of discretion. *See In re Jane Doe 2*, 19 S.W.3d 278, 281–82 (Tex.2000); *see also In re W.E.R.*, 669 S.W.2d at 716 ("The granting or denial of an adoption is based on a determination of the best interest of the child. The decision as to whether or not to grant an adoption is within the discretion of the trial court, which may not be set aside except for abuse.") (citation omitted). A trial court does not abuse its discretion if some evidence of a substantive and probative character supports the trial court's decision. *In re Gonzalez*, 993 S.W.2d 147, 155 (Tex.App.-San Antonio 1999, no pet.)

█ In the present case, the 313th District Court—the court of continuing and exclusive jurisdiction—issued the final decree terminating the parental rights of DDD's, DJD's, JID's, and CRD's biological parents and appointing the DFPS as the children's sole managing conservator. During the course of the termination suit, the trial court was presented with evidence of the biological mother's long history of drug abuse, as well as her extensive history with DFPS dating back to 1985. The trial court also learned that the agency had already successfully petitioned to have the biological mother's parental rights terminated with regard to her three oldest children. The record also reflects that after DFPS removed the children from Celestine's home in December 2006, the 313th District Court held a hearing to determine whether the removal was proper. During that hearing, both Celestine and DFPS had an opportunity to present evidence and argue their respective cases. The record also reflects that a caseworker testified during that hearing that she re-

moved the children after she visited Celestine's home and found the biological mother there. According to the caseworker, she had previously told Celestine that the biological mother could not have contact with the children. Celestine also testified at the hearing. According to Celestine, she was not at home when the caseworker visited, and her daughter had allowed the biological mother to see the children, not her. The children were never returned to Celestine, and remain in foster care. In light of these prior proceedings, we conclude that some evidence of a substantive and probative character supports the trial court's implicit finding that waiver of the six-month requirement was not in the children's best interest.

■ As for Celestine's contention that she should have been allowed an opportunity to present additional evidence demonstrating why waiver of the residency requirement was in the children's best interest, we conclude that this argument is without merit. First, unlike other provisions of Chapter 162 of the Family Code, section 162.009 does not expressly require the trial court to hold a hearing specifically on this issue before it determines whether waiver of the six-month requirement is in the children's best interest. *Compare* TEX. FAM.CODE ANN. § 162.009(b) *with* TEX. FAM.CODE ANN. § 162.010(a) (requiring trial court to hold hearing to determine whether managing conservator is refusing or has revoked its consent to the adoption without good cause). Second, it is apparent from the record that the October 2008 hearing was not the first time Celestine's fitness to care for the children was called into question. The trial court had already heard substantial testimony regarding the reasons why DFPS removed the children from Celestine's home in December 2006. During that hearing Celestine had ample opportunities to

present her side of the story and argue why the children should be returned to her care—a factor which necessarily implicates the overriding goal in SAPCR cases, the best interest of the children involved. Celestine is *now asking for yet* another opportunity to argue her case. We see no reason why Celestine should be allowed to have yet another bite at the proverbial apple.

Having determined that the trial court's dismissal of Celestine's petition was proper under section 162.009, we need not address whether the trial court would also have been correct in dismissing her petition under section 162.010.

We overrule Celestine's second and third issues.

## DISMISSAL WITH PREJUDICE

■ Celestine also challenges the trial court's dismissal of her petition with prejudice. Celestine, however, does not allege any facts or direct us to any supporting legal authority or evidence in the record which would allow us to conclude that dismissal with prejudice was improper *in her case.*

■ Having concluded that the trial court's dismissal of Celestine's petition was proper under section 162.009, we must now determine whether a dismissal with prejudice was proper. Dismissal with prejudice constitutes an adjudication on the merits and operates as if the case had been fully tried and decided. *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991). Here, the trial court made an implicit finding that waiver of section 162.009's six-month residency requirement was not in the children's best interest. A finding as to the "best interests" of a child goes to the very heart of the merits in any adoption proceeding. *See* TEX. FAM.CODE ANN. § 162.016(b) (Vernon 2008) (stating that finding that adoption is in best interests of

child is prerequisite to granting of any petition for adoption). Accordingly, the trial court's dismissal of Celestine's petition under section 162.009 was a dismissal on the merits, and, therefore, subject to dismissal with prejudice.

We overrule Celestine's challenge to the dismissal of her petition with prejudice.

## DENIAL OF MOTION FOR NEW TRIAL

In her notice of appeal, Celestine states that she is appealing both the dismissal of her petition with prejudice, and the trial court's denial of her motion for new trial. Celestine, however, does not argue on appeal that the trial court erred, or even abused its discretion, when it denied her motion for new trial. She has not provided us with any authority on this issue. We will nonetheless address Celestine's argument in the interests of judicial economy and justice. *See generally* TEX.R.APP. P. 38.1(i); *Fredonia State Bank,* 881 S.W.2d at 284; *Blanks,* 196 S.W.3d at 452.

We review a trial court's denial of a motion for new trial for abuse of discretion. *Dir., State Employees Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 268 (Tex.1994). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law. *In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex.2005). In her motion to the trial court, Celestine argued that she was entitled to a new trial because the court's legal basis for dismissal was erroneous. Having determined that the trial court did not abuse its discretion—much less commit reversible error—when it dismissed Celestine's petition with prejudice under section 162.009, we cannot say that the trial court abused its discretion when it denied Celestine's motion for new trial.

We overrule Celestine's challenge to the denial of her motion for new trial.

## CONCLUSION

We affirm the judgment of the trial court.