No. 01-14-00952-CV

FILED IN
1ST COURT OF APPEALS
HOUSTON, TEXAS

AUG 31 2015

CHRISTOPHER A PRINE
CLERK

IN THE COURT OF APPEALS

FOR THE FIRST DISTRICT OF TEXAS

HOUSTON, TEXAS

Herbert Jackson,
Respondent - Appellant,

V.

Patricia A. Jackson,
Applicant - Appellee.

Appeal from the 328TH DISTRICT COURT

Cause No. 14-DCV-217167

FORT BEND COUNTY, TEXAS

BRIEF OF THE

APPLICANT-APPELLEE, PATRICIA A. JACKSON

Patricia A. Jackson, Pro Se
2015 Hilton Head Dr.
Missouri City, Texas  77459-3309

hepajacks@sbcglobal.net

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................3

STATEMENT OF ORAL ARGUMENT..........................................................4

STATEMENT OF THE CASE...........................................................................
     FACTS...........................................................................5-12
     PROCEDURAL HISTORY............................................................12

STANDARD OF REVIEW...........................................................................13

ARGUMENT...........................................................................14
1.    The Appellee presented evidence that was legally and
     factually sufficient to make a finding of family
     violence.....................................................................14-15
2.    The District Court did not abuse its discretion in making a
     finding of family violence.......................................................15

CONCLUSION...........................................................................16

CERTIFICATE OF SERVICE...........................................................................16

# TABLE OF AUTHORITIES

## Cases

In re Doe, 19 S.W.3d 249,253 (Tex. 2000)................................................13

Vongontard v. Tippitt, 137 S. W. 3d 109, 112 (Tex. App.-Houston[1st Dist.]2004, no pet.)........................................ .13

Boyd v. Palmore, 425 S.W.3d 425, 430 (Tex. App. – Houston[1st Dist.]2011, no pet.) ................................................................13

In re Epperson, 213 S.W.3d 541, 544 (Tex. App.-Texarkana 2007, no pet.)................................................................ .15

Celestine v. Dep't of Family & Protective Servs., 321 S.W.3d 222,235 (Tex. 2010).................................................15

## Statutes

TEX. FAM. CODE ANN. 71.004(1)(West 2014)................................ .13

## Court Rules

## STATEMENT REGARDING ORAL ARGUMENT

Because the arguments in appellant's brief have not been properly preserved for appeal, the appellee believes that oral argument is unnecessary.

**STATEMENT OF THE CASE**

**I.    Facts**

1. 1st Incident

On **Sunday, May 18, 2014** the Appellant, Herbert Jackson and his wife, the Appellee, Patricia A. Jackson were waiting at the airport to board a flight back to Houston from Costa Rica after traveling with a group (Shell Employees Club). Another male passenger sit beside Patricia and while waiting they began to engage in a conversation. Herbert beckoned for Patricia to come with him. Patricia followed Herbert to another gate where there was no one. Herbert sat down and asked Patricia to sit beside him and when she sat Herbert elbowed her in the side. Patricia jumped up from the pain in her side and Herbert angrily told her to sit back down and said she was being disrespectful and called her a bitch. Herbert said he knew Patricia didn't like being called a bitch but said he was going to call her one anyway and wanted to know what she was talking about with the male passenger. Patricia said they were having general conversation about Costa Rica and where each of them was from. Patricia told Herbert that she told the other passenger that she was traveling with husband and he was traveling with his partner. Herbert continued asking Patricia the same thing several times about what she and the passenger was talking about. Patricia continued

5

repeating the same thing and Herbert told Patricia if she said that one more time that he would bust her in the face. Patricia didn't say it again because she knew Herbert would do just that. Afterwards, Herbert and Patricia went back to their gate and Herbert acted like he always does, as if he had done nothing.

After returning from Costa Rica Patricia started calling Herbert very seldom and stopped spending time with him, and he noticed it. Then in July, Herbert told Patricia that he wanted her to look at some papers, so he asked her to come by his house after church. Patricia hesitated, but said okay. Once she got there Herbert asked, where is your phone? She said it was in the car, because she wasn't expecting to be there long, because she was only there to look at pap0000ers. Herbert said go get it, but he changed his mind and decided to go and get it himself, and took her keys. After getting the phone Herbert proceeded to go through Patricia's phone to see who she's been talking to and found nothing. Herbert told Patricia that he wasn't giving her back the keys until they discussed and settled what's been going on with regards to their marriage. He told her she wasn't leaving until they do. Patricia realized that there were never any papers Herbert needed her to look at, but it was his way of getting her to his house. Herbert wanted to know why she was distancing herself and he said that he believed it was because she had no intentions of reconciling with him.

He was right, however, Patricia was afraid to tell him in fear of his reaction and she had no keys to leave. As the conversation continued between Herbert and Patricia the subject of divorce finally came up. Herbert said he wouldn't file, so Patricia said she would and he wanted to know when. She told him August. Herbert told Patricia not to tell anyone that he had kidnapped her, and he wouldn't give her keys back to leave until she had sex with him. After that conversation, Herbert started showing up at Patricia's home often and unannounced.

2. 2nd Incident

On **Monday, August 18, 2014** Herbert showed up unannounced at 3:30 am to Patricia's home. She was awakened, because the dogs started barking after hearing the door bell ringing and knocking at the door. Patricia got up and saw that it was Herbert and opened the door. She didn't want to open the door, but she afraid if she didn't it could be a confrontation. Herbert proceeded to the bedroom and the first thing he said was take off your clothes. Patricia told him that she didn't feel like having any sex because she needed to start getting ready for work. He wasn't hearing any of that and wouldn't take no for an answer. Herbert then asked where had she been the day before because he couldn't get in contact with her. Patricia told him that she was at her office working. He asked her that several times and that let her know that he didn't believe her. After

7

the sex Herbert wanted to talk about other things and Patricia didn't she needed to get ready for work and told him that. Herbert didn't care what she wanted and started saying she couldn't keep him out of that house because it was his house too. Patricia didn't want to hear any of that and continued asking him to leave so that she could get ready for work. She only got him to leave by saying she would come by his home during her lunch and talk with him. He said okay and then left. Patricia didn't go by as she said and Herbert called about 4:50 pm. She told him she got busy during lunch and didn't make it and was now on her way to pick up her grandson, Carson from school. Herbert called again about 8:27 pm and wanted to know how it was going. Patricia told him that Carson had just left and that she was tired and about to go to bed. Herbert raised his voice and told her that she must be crazy and has lost her mind. He told Patricia that did she think that she would be allowed to continue treating him any kind of way. She again told him she was tired because he had awaken her out of her sleep earlier that morning. Herbert said so what. Patricia explained her tiredness again and he said okay he understood. He said go ahead get some rest and we will talk tomorrow. After going to bed about 9:17 pm the doorbell started ringing and the dogs started barking. Patricia got up and peeped into foyer because she was afraid that it was Herbert again. Looking through the

8

glass doors she could see that her fear was confirmed, and it was Herbert again, twice in one day. At this point she is scared and didn't know his frame of mind, because she had just talked to him about 45 minutes earlier. Patricia wouldn't open the door and was scared and nervous and couldn't think, so she called her daughter Marquita Wilson and asked her to call the police for her because Herbert was there again for the second time on the same day. She told her daughter she wanted him gone, but wasn't going to open the door. Herbert kept ringing the door bell and knocking on the door and the dogs wouldn't stop barking. He then started knocking on the bedroom window and calling her cell phone. Patricia wouldn't answer the cell phone and by this time she was really scared and called her neighbor across the street, Elizabeth, Amalguer at 2022 Hilton Head and asked to call the police too. As Herbert was knocking on the window, Patricia eased out of her bedroom and went upstairs to go hide in the attic. Her daughter called her back on her cell phone and told her that the police was on the way and would be calling her. Patricia was scared and asked her daughter did she tell the police to hurry. She continued talking to her daughter and then the police called on the Land Line. She told her daughter to stay on the phone and not to hang up on the cell. While talking to the police and telling them what was going on, the dogs started barking more and Patricia heard Herbert's

9

voice. She told the police that she heard his voice and that was inside of her house and didn't know how he got in because she have storm doors and they were all locked and he didn't have a key to them. Herbert's voice became clearer as he started coming up the stairs and Patricia attempted to get closer to the attic. Before making it to the attic Herbert found her in bedroom at the end of the hall. As he approached, Patricia hung up on the police because she was afraid of what Herbert would do if he knew that she was on the phone with the police. She didn't hang up the cell phone because she wanted her daughter to hear what was going on. He told her that she didn't have to be afraid come on let's go downstairs and talk. Patricia saw a wire hanger in his hand and asked him what was he doing with it? Herbert told her he picked it up when he came in. She knew that wasn't true. He continued to lead her downstairs and saw that Patricia had her cell phone in her hand. He motioned for her to hang up and she wouldn't. She told Herbert the storm doors were all locked. So, she asked him how was he able to get in? She doesn't remember him answering. Herbert then sat her on the sofa beside him and raised her hand with the cell phone and hit the end call button to hang up from her daughter; and said why are you putting your children in this? He started telling Patricia that she couldn't keep him out of this house because his TDL has this address on it. He said that meant she couldn't keep him out and

10

he could come in just like she could. Patricia told Herbert that they had just talked and she told him that she was going to bed and he agreed they would talk the next day. He said he changed his mind and asked her don't you change your mind. At this point Patricia is really scared and was praying that the police would soon arrive because she didn't want to talk anymore. At that point the doorbell rang and Herbert went to the door. The police was at the door and asked him to step outside. After the police was going back and forth with Herbert about where he lived, Herbert told the police that he had been living at his inherited home for the last 3 ½ years. The police told him since he had established residence somewhere else this house was no longer his home to come and go as he please no matter what his TDL showed. The police told Herbert that coming through a locked door to get to a door that he did have a key to, was Criminal Trespassing. The police told him that Patricia did not want him there and asked him to leave. Herbert said that he didn't hear her say that. Patricia turned to him and told him she wanted him to leave. They gave back the keys they had to each other's residence, however Patricia had another key and told Herbert the other key was on the set of keys that her daughter had to her car that she was driving. She told him she would give him the key when she gets it from her daughter. Patricia talked about having a previous Protective Order on

11

Herbert back in 2011, but it had expired. The police said that maybe you should finalize with a divorce this time. At that time Herbert started to leave and told Patricia that he had torn the door off and let him know what it cost to get it fixed. Patricia's daughter Monique, her fiancé, Michael, and her grandson, Carson came by as Herbert was leaving and Patricia told them what Herbert said and went to back to look at the door. By this time, Herbert had left and Monique told her mother that Mr. Herbert has torn your new storm door off and he should go to jail for that. Monique made that statement because she had just picked up Carson a couple of hours earlier and had come in and out that same door.

## II. Procedural History

On August 25, 2014 Appellee, Patricia A. Jackson, Pro Se filed an application for a Protective Order against Appellant, Herbert Jackson, Pro Se in the District Clerk's office in Fort Bend County, Texas. A judgment was entered on September 23, 2014 and the Protective Order was granted to Patricia in the 328th Judicial District Court in Fort Bend County, Texas.

On October 7, 2014 Herbert filed a motion for a new trial. The Motion for a New Trial was heard on October 27, 2014 and the motion was denied.

12

## STANDARD OF REVIEW

The Court should review the Judicial District Court's legal and factual sufficiency standards. **In re Doe, 19 S.W.3d 249,253 (Tex. 2000); Vongontard v. Tippitt, 137 S. W. 3d 109, 112 (Tex. App.-Houston[1st Dist.]2004, no pet.).**

The Court should review **TEX. FAM. CODE ANN. 71.004(1)(West 2014)** (emphasis added). Thus, a family member's actions can meet the definition if they are intended to result in harm or involve a threat that reasonably places the other family member in fear of imminent harm. **Boyd v. Palmore, 425 S.W.3d 425, 430 (tex. App. – Houston[1st Dist.]2011, no pet.).**

The Court should review cases involving family-violence protective orders, evidence that a person has engaged in abusive conduct in the past permits an inference that a person will continue this behavior in the future. **In re Epperson, 213 S.W.3d 541, 544 (Tex. App.-Texarkana 2007, no pet.)**

## ARGUMENT

I.  The Appellee presented evidence that was legally and factually sufficient to make a finding of Family Violence.

The Judicial District Court found correctly that the evidence presented was legally and factually sufficient to make a finding of family violence because the photographs that the appellant is referring to in this appeal was not used to make that determination.

Yes, Patricia did attach photographs to the application for Protective Order, however, during the Hearing on September 23, 2014 the old photographs were never mentioned by her in testimony given in the trial court. Herbert mentioned those pictures (RR Vol 1 p 33) only after pictures were introduced by Patricia (RR Vol 1, p 28-30), concerning the incident on August 18, 2014 of ripping the storm door to gain access to a door that he had a key for. He said they were attached to pad the application and Herbert said he categorically denied them. The pictures with dates correspond to incidents and dates on the previous protective order 11-DCV-187019 issued on January 31, 2011 by the 328th Judicial District Court in Fort Bend County. Herbert and Patricia both signed the agreed protective order.

The photographs (CR Vol 1 of the ripped off storm door were entered into evidence by Patricia (RR, Vol 1 page 28-30). The

14

Court asked Herbert if he had any objection to the Court looking at the photographs of the ripped storm door that was being entered as admissible evidence and Herbert said no. I don't have any objections (RR, Vol 1 page 29). If no objection was made by Herbert during the hearing it should not be appealable.

II. The Judicial District Court did not abuse its discretion in making a finding of family violence.

A trial court abuses its discretion if it acts without reference to any guiding rules or principles or fails to correctly analyze or apply the law. **Celestine v. Dep't of Family & Protective Services, 321 S.W.3d 222,235 (Tex. 2010)**

Herbert has admitted to family violence in the past and if there is evidence that a person has engaged in abusive conduct in the past an inference is permitted that a person will continue this behavior in the future. **In re Epperson, 213 S.W.3d 541, 544 (Tex. App.-Texarkana 2007, no pet.)**

## CONCLUSION

For the reasons stated above, this Court should affirm the Trial Court's findings that the evidence was legally and factually sufficient in finding that family violence had occurred and likely to occur in the future to award a protective order.

Respectfully submitted,

Patricia A. Jackson, Pro Se
2015 Hilton Head Dr.
Missouri City, Texas   77459
(281) 437-7718 Telephone Home
(281) 615-0980 Telephone Cell
hepajacks@sbcglobal.net

16

## CERTIFICATE OF SERVICE

I Patricia A. Jackson, certify that today, August 31, 2015, a copy of the brief for Appellee, was served upon:

VIA: *Facsimile 713 227-0066 and*
*Regular US Mail*
TO: Attorney Annie P. Briscoe
1217 Prairie St., Suite 207
Houston, Texas 77002
Annie P. Briscoe